**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **HOLLY KERODIN** *et al.* | * | |
| | * | |
| *Plaintiffs*, | * | |
| | * | Case No.: RWT 11cv2981 |
| **v.** | * | |
| | * | |
| | * | |
| **SERVICEMAGIC, INC.** *et al.* | * | |
| | * | |
| *Defendants*. | * | |
| | * | |

**MEMORANDUM OPINION**

In their complaint, Plaintiffs Holly and Christian Kerodin claim that Defendants ServiceMagic, Inc., Market Hardware, Inc., and Brian Kraff infringed and otherwise interfered with their alleged service marks, consisting of nine internet domain names. *See* ECF No. 1. On March 5, 2012, Defendants filed a motion to dismiss the complaint for failure to state a claim. *See* ECF No. 10.

**Background**

In December 2006, Plaintiffs registered and allege that they began to use nine Internet domain names. *See* ECF No. 1 ¶ 14. The domain names used included: 1) PotomacHeating.com; 2) PotomacCooling.com; 3) PotomacAirConditioning.com; 4) RockvilleHeating.com; 5) RockvilleCooling.com; 6) RockvilleAirConditioning.com; 7) BethesdaHeating.com; 8) BethesdaCooling.com; and 9) BethesdaAirConditioning.com. *Id.*

Defendant Market Hardware is a provider of small business website marketing products, including domain name selection and registration and "pay-per-click" online marketing. *Id.* ¶ 29. Defendant ServiceMagic provides "pay-per-lead" online marketing services for its member businesses, routing consumer requests for services to its members' websites. *Id.* ¶ 31.

Defendant Kraff is the CEO and co-founder of Defendant Hardware and the Senior Vice President of ServiceMagic. *Id.* ¶ 32.

In September of 2009, Defendants allegedly registered the following six Internet domain names: 1) Potomac-Heating.com; 2) Potomac-Cooling.com; 3) Rockville-Hearing.com; 4) RockvilleHVAC.com; 5) Bethesda-Hearing.com; and 6) BethesdaAC.com. *Id.* ¶ 33. In January of 2011, Defendants also registered the same six domain names as ".mobi" names for use by mobile devices. *Id.* According to Plaintiffs, Defendants' actions resulted in consumers being diverted from Plaintiffs' websites to the new, similarly-named websites. *Id.* ¶ 34.

In March of 2011, Plaintiffs allege that they first discovered the existence of Defendants' registered domain names. *Id.* ¶ 37. On March 2, 2011, Plaintiffs obtained Articles of Organization for Potomac Heating, Cooling, & Air Conditioning LLC from the State of Maryland Department of Assessments and Taxation, Charter Division ("SDAT"). *Id.* ¶ 27. On the same date, Plaintiffs also registered with SDAT the trade names Rockville Heating, Cooling, & Air Conditioning and Bethesda Heating, Cooling, & Air Conditioning. *Id.* Throughout the latter half of March, Plaintiffs sent several Cease and Desist notifications to Defendants Market Hardware and ServiceMagic requesting that they stop infringing on Plaintiffs' service marks, but Defendants did not deactivate the allegedly infringing websites. *Id.* ¶¶ 39-43.

Plaintiffs filed suit against Defendants on October 19, 2011. *See* ECF No. 1. Plaintiffs' Complaint contains the following claims:

1) Count I – Cybersquatting Under 15 U.S.C. § 1125(d)

2) Count II – Service Mark Infringement, False Designations of Origin and False Descriptions Under 15 U.S.C. § 1125(a)

3) Count III – Dilution Under 15 U.S.C. § 1125(c)

    4)    Count IV – Violation of Maryland Commercial Law Title 13 Maryland Consumer Protection Act, Md. Code Ann., Com. L. § 13-301

    5)    Count V – Maryland Common Law Trademark Infringement, Unfair Competition, and Passing Off

On March 5, 2012, Defendants jointly filed a motion to dismiss the complaint for failure to state a claim. *See* ECF No. 10. The motion has been fully briefed, and, for the reasons set forth below, will be granted.

### **Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Under the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id*. at 1950; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most

favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)).

## **Discussion**

Plaintiffs' complaint must be dismissed, as Plaintiffs have failed to allege facts demonstrating that they have exclusive ownership over the domain names at issue, and that the domain names are valid and protectable service marks. The five counts in Plaintiffs' complaint all share an underlying requirement: that the internet domain names at issue be valid and protectable service marks belonging exclusively to Plaintiffs. "In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). *See also* 15 U.S.C. § 1125(d) (requiring that a plaintiff bringing a cybersquatting claim be "the owner of a mark"); *B & J Enterprises, Ltd. v. Giordano*, 329 F. App'x. 411, 416 (4th Cir. 2009)

("in order to prevail on either a trademark or cybersquatting claim, a plaintiff must first and most fundamentally prove that it has a valid and protectable mark") (internal quotation omitted). Ownership of a protectable mark is necessary element of both Plaintiffs' state and federal law claims. *See*, *e.g.*, *Community First Bank v. Community Banks*, 360 F. Supp. 2d 716, 722 (D. Md. 2005) ("the Maryland courts have recognized that trademark infringement cases under either the Maryland statute or the [federal] Lanham Act [15 U.S.C. §§ 1051 *et seq.*] are based on the same legal theory and require the same proof") (internal quotations omitted); *Sterling Acceptance Corp. v. Tommark, Inc.,* 227 F. Supp. 2d 454, 460 (D. Md. 2002) ("The test for trademark infringement and unfair competition under state law is the same as the test under the Lanham Act.").

> I. **Plaintiffs have not established their ownership rights to the domain names.**

Plaintiffs assert that their interest in the internet domain names at issue arises from their registration of the domain names, and their subsequent use of those domain names in advertisements. Exclusive rights to a service mark are not obtained through registering the mark, however, but through being the first person or entity to consistently use it for a bona fide business purpose. "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir. 2003) (citation omitted); 15 U.S.C. § 1127 (setting forth the "bona fide use of a mark in the ordinary commerce of trade" requirement). As the District of Maryland has noted, "nearly every Court to have decided whether mere registration or activation of a domain name constitutes 'commercial use' has rejected such arguments." *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 507 (D. Md. 1999). *See also Pure*

*Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL 2474317, at *3 (N.D. Ill. Sept. 30, 2004) ("The law is clear that the mere registration of a domain name does not constitute the use of the domain name as a trademark."). Rather, under the Lanham Act, a mark is used in commerce if it is "used or displayed in the sale or advertising of services and the services are rendered in commerce . . ." 15 U.S.C. § 1127. "[C]ontinuous commercial utilization" of the mark is required to satisfy the actual use requirement; "[s]poradic or minimal" commercial activity is not enough. *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 20 (C.A.D.C. 2008) (citations omitted).

Based on the facts presented in complaint, the nine domain names were not used in bona fide commerce by Plaintiffs during the months and years preceding the initiation of this lawsuit. Plaintiffs' registration of the domain names in December of 2006 is not sufficient, by itself, to have established ownership over the alleged marks. Plaintiffs did not allege any actual use of the marks in connection with any legitimate business until March of 2011, when Plaintiffs incorporated Potomac Heating, Cooling, and Air Conditioning LLC. Even after that date, though, Plaintiffs did not allege that they engaged in continuous commercial utilization of the service marks. On Potomac Heating's website, Plaintiffs noted that they were ceasing all business operations (to the extent there ever were any) pending the outcome of this litigation, *see* ECF No. 10 Ex. 1.,[1] thereby failing to maintain any sort of constant and legitimate commercial use of the domain names either prior to or after initiating this action. Without any allegation of

---

[1] The Court may properly take notice of this evidence, as well as the current state of Plaintiffs' website, without turning this motion into a motion for summary judgment. *See* Fed. R.Evid. 201 (judicial notice of facts is proper when the fact is "capable of accurate and readydetermination by resort to sources whose accuracy cannot be reasonably questioned"); *Philips v.Pitt Cnty. Mem. Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) (on a 12(b)(6) motion the court "may properly take judicial notice of matters of public record"); *Wang v. Pataki*, 396 F. Supp. 2d 446,458 (S.D.N.Y. 2005) ("The Court may take judicial notice of such internet material.").

bona fide commercial use, Plaintiffs' claim of exclusive ownership rights to the domain names must fail.

## II. Plaintiffs have not alleged facts sufficient to show that the domain names are valid service marks.

Plaintiffs' complaint also fails to demonstrate that the domain names at issue are valid and protectable service marks. Domain names can fall into one of four categories of marks: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). If a term is generic (a common name for a thing) or merely descriptive, it is ineligible for trademark protection. If a term is fanciful (invented solely for use as trademark), arbitrary (a common word applied in an unfamiliar way), or suggestive (partially descriptive and partially fanciful), the association between the mark and its source is presumed and the mark is eligible for trademark protection. *Id.* at 124-25.

Plaintiffs' domain names employ only generic and descriptive terms such as "heating" and "Potomac." Plaintiffs themselves acknowledge in the complaint that they "deliberately selected domain names based on geographic specificity and the services offered." ECF No. 1 ¶ 19. There is no plausible allegation in the complaint that these marks have taken on a unique secondary meaning that would distinguish them from the general service and location referenced. *See* 2 McCarthy on Trademarks and Unfair Competition § 14.1 (4th ed.) ("Terms that are descriptive of the geographic location or origin of goods and services are . . . not . . . 'inherently distinctive' marks [and] can be protected as trademarks only upon proof that through usage, they have become distinctive."); *B & J Enterprises, Ltd. v. Giordano*, No. MJG-06-1235, 2008 WL 7874196, at *2 (D. Md. Mar. 11, 2008) ("For a geographically descriptive mark to be protectable, the mark must have acquired a secondary meaning identifying the trademark owner as the unique source . . ."). While Plaintiffs allege that they have used the marks in advertising,

7

they make no plausible allegation that the effect of this advertising has been to create a distinctive mark in consumers' minds. Accordingly, Plaintiffs' alleged marks are not eligible for protection, and Plaintiffs' complaint fails to present any valid claims upon which relief can be granted.[2]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint [ECF No. 10] shall be granted. A separate Order follows.

Date: March 11, 2013                                        /s/

ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[2] As noted above, the existence of a valid, protectable service mark is a *sine qua non* of Plaintiffs' five claims. In the absence of a protected service mark, all of Plaintiffs' claims, including the state claims and the federal dilution claim, must fail.